JEFFREY THEODORE KITZE

v.

COMMONWEALTH OF VIRGINIA

Record No. 921908

September 17, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Hassell, JJ., and Poff, Senior Justice

*William H. Shewmake (M. Scott Goodman; Coats & Davenport,* on briefs), for appellant.

*H. Elizabeth Shaffer, Assistant Attorney General (Stephen D. Rosenthal, Attorney General,* on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The dispositive issue we consider in this appeal is whether the defendant in a criminal case is entitled to have his convictions set aside because of improper closing argument by the Commonwealth's Attorney.

Jeffrey Theodore Kitze was indicted by a grand jury in Albemarle County for rape and malicious wounding. He was tried before a jury and convicted of both offenses. The jury fixed his punishment at 27 years in the penitentiary for rape and 10 years for malicious wounding. The trial court sentenced him in accordance with the jury's verdict. The Court of Appeals affirmed the judgment of the trial court, *Kitze v. Commonwealth,* 15 Va. App. 254, 422 S.E.2d 601 (1992),

and subsequently denied Kitze's petition for a rehearing. We awarded Kitze an appeal.

Kitze, a resident of New York, traveled to Virginia to attend his sister's graduation ceremony at the University of Virginia. He arrived in Charlottesville on May 20, 1989, and he stayed at a house that his sister shared with three roommates. On the morning of May 22, 1989, the day after the graduation, Kitze and his sister left Charlottesville to return to New York. They were driving separate cars. They left the house between 8:45 a.m. and 9:00 a.m. The victim, who had shared the house with the defendant's sister, said goodbye to her and went in a bathroom to take a shower.

Kitze, ostensibly en route to New York, drove his car behind his sister's car for a short distance. When he had driven his car approximately one-half mile from the victim's house, he "felt like doing something like hurting [his sister's roommate]."

He returned to the house and parked his car. He removed a tire iron from the trunk of his car because he "wanted to find something to hurt the girl with." He entered the house and walked down the hall to a bedroom that adjoined a bathroom. The victim was in the bathroom drying her hair. Kitze knocked on the door and asked the victim if she had seen his car keys. She told him no.

Kitze walked back to the living room where he claimed he tried to "fight this feeling." He returned to the bathroom, grabbed the victim by the hair, pulled her out of the bathroom, pushed her onto the floor in the bedroom, and hit her several times in the back of her head with the tire iron. He then shut the window so that no one would be able to hear her screams for help. A struggle ensued. He told her to take off her sweatpants and underwear. She did so, and he raped her.

He instructed the victim to put her clothes on and then he again hit her several times in the head with the tire iron. The victim fell to the floor, and Kitze stopped hitting her. When the victim asked Kitze why he had raped and beaten her, he said that he "was frustrated."

Kitze washed his hands, took a towel out of the bathroom and began to remove the victim's blood from the doorknobs and clean other items in the room. He told the victim to remove her bloody shirt and put on a clean one, which she did. After cleaning the room for approximately ten minutes, Kitze left the house and returned to New York where he was arrested three days later.

At trial, Kitze admitted that he had committed the acts, but claimed that they were the result of an irresistible impulse. Kitze had sustained multiple skull fractures, multiple jaw fractures, and injury to his inner ear in a bicycle accident in 1982. He presented evidence that these injuries affected his short-term memory, and altered his personality and behavior. In 1987, Kitze suffered another head injury when he was hit in the head with a nightstick by a private security officer.

Dr. Robert S. Brown, Sr., a psychiatrist who testified as a defense witness, examined Kitze, reviewed his medical records, and interviewed people who knew him. Dr. Brown testified that when Kitze committed the offenses, he was suffering from a mental illness related to his previous brain injuries, and that at the time of the offenses, Kitze had an irresistible impulse.

Dr. S. Kenneth Hoge, a psychiatrist who testified on behalf of the Commonwealth, stated that he could not conclude to a reasonable degree of medical certainty that Kitze had a mental disease or defect, although he exhibited some signs and symptoms of a mental disease. Dr. Hoge opined that Kitze was not suffering from an irresistible impulse at the time of the offense and testified that "it's hard to even conceive of how someone would rape someone as an irresistible impulse."

Kitze argues that his convictions should be set aside because the Commonwealth's Attorney made improper closing argument to the jury. The Commonwealth argues, however, that the convictions should not be set aside because the trial court gave the jury a "cautionary instruction at the close of argument [that] was prompt and unequivocal."

In his closing argument, the Commonwealth's Attorney stated:

Ladies and gentlemen, thank you for fulfilling the highest duty that a citizen can be called upon to fulfill. To sit as a juror is a — as an enormous a responsibility as requested of people of the community. Here you are the protection of this community against the man who raped and brutally beat a woman in Ivy.

He has admitted to you every act necessary to commit the offense of rape and malicious wounding and those are the two (2) charges. He was not insane at the time he committed those acts. The law provides him no excuse for this behavior and you

will find this when you put your minds together and consider the evidence. What he is saying is that yes, I did this. I did everything that amounts to these two (2) offenses, one carrying a penalty of five (5) years to life in the penitentiary and one carrying a penalty up to twenty (20) years in the penitentiary, saying I did everything necessary to — to find guilt on these offenses, but the law, in the form of an insanity defense says you may go free and a jury must find you not guilty if you find — if you can respond to an irresistible impulse.

Kitze's attorney objected to this argument as improper. He asked the court to instruct the jury that if it found the defendant not guilty by reason of insanity, the defendant "does not walk free." The court overruled the objection and directed the Commonwealth's Attorney to proceed with closing argument. After the Commonwealth's Attorney had concluded, Kitze's attorney asked the court to instruct the jury regarding what would happen to the defendant if the jury found him not guilty because of insanity. The court stated, "I'm going to instruct this jury on that very question and I'd like for you to proceed with your argument per the instructions given to the jury and I will instruct them further on the point that was raised."

After defense counsel and the Commonwealth's Attorney had concluded their argument, the court told the jury:

All right, ladies and gentlemen of the jury, I previously mentioned to you the verdict forms, one concerning the rape charge, one considering the malicious wounding. On the rape charge, there are three (3) possible verdicts, you need to reach a verdict on that charge and you should not concern yourselves with what happens after your verdict, whatever it is, so you need to confine yourself to the evidence as presented, follow the instructions and come up with your verdict and not concern yourselves with what might happen after your verdict is rendered. That's for the Court to take up after your verdict.

When the jury retired to the jury room, Kitze's attorney made a motion for a mistrial because he believed that the court did not cure the Commonwealth's misstatement that if the defendant is found not guilty by reason of insanity, he would be set free. Denying the motion for a mistrial, the court stated:

I have made a ruling and told the jury that they are to confine their considerations to the evidence and follow the instructions. I have told them not to consider anything further beyond rendering one of the possible verdicts, so I think I have covered what you're saying. . . . I'll deny your motion for a mistrial.

■■■ We hold that the Commonwealth's argument was improper, that the trial court's cautionary instruction was insufficient, and that the defendant's convictions must be set aside. In *Saunders* v. *Commonwealth*, 218 Va. 294, 303, 237 S.E.2d 150, 156 (1977), we stated:

The rule in Virginia is well established that a judgment will not be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* court. *Washington and Old Dominion Ry.* v. *Ward's Admr.*, 119 Va. 334, 339, 89 S.E. 140, 142 (1916). Conversely, as an exception to the rule, if the prejudicial effect of the impropriety cannot be removed by the instructions of the trial court, the defendant is entitled to a new trial. *Coffey* v. *Commonwealth*, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949).

Additionally, in *McLane* v. *Commonwealth*, 202 Va. 197, 116 S.E.2d 274 (1960), we discussed the standard that we invoke in determining when an improper statement constitutes reversible error.

The making of improper statements in argument is reversible error, where such statements are so impressive as to remain in the minds of the jurors and influence their verdict.

We have repeatedly held that Attorneys for the Commonwealth are not only under the duty to prosecute one charged with crime; but also under the duty to see that the accused gets a fair and impartial trial. Nothing should be done or permitted to prejudice the case of an accused, or obscure the minds of the jurors on the question of whether or not he is guilty of the offense charged.

*Id.* at 205, 116 S.E.2d at 281 (citations omitted).

■ Here, the Commonwealth's Attorney improperly told the jury that if it found that Kitze had committed the offenses because of an irresistible impulse, then he would be set free, and he implied that the jurors, as protectors of the community, would have failed in their responsibility to protect the community. This statement was highly prejudicial, and there is a "manifest probability" that it improperly influenced the jury's verdict.

■ The trial court's statement directing the jury not to concern itself with what may happen to the defendant regardless of its verdict did not remove the prejudicial effect of the improper comment by the Commonwealth's Attorney. It is true, as asserted by the Commonwealth, that the jury has no right to be advised of post-sentencing events. Indeed, this Court has repeatedly held that "it is the duty of the jury if they find the accused guilty to impose such punishment as they consider to be just under the evidence and within the limits stated in the court's instructions; and that they must not concern themselves with what may afterwards happen." *Jones* v. *Commonwealth*, 194 Va. 273, 275, 72 S.E.2d 693, 694 (1952); *accord Hinton* v. *Commonwealth*, 219 Va. 492, 495, 247 S.E.2d 704, 706 (1978). That rule is not, however, implicated here, because the prejudice created by the Commonwealth's Attorney's improper statements to the jury could not have been removed by the trial court's instructions.

We will reverse the judgment of the trial court and remand the case for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*