COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Lorish
Argued at Richmond, Virginia

WILLIE WILLIAMS

v.      Record No. 0595-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE LISA M. LORISH
MARCH 7, 2023

FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Paul W. Cella, Judge

(Benjamin N. Spence; Spence Law, P.C., on brief), for appellant.
Appellant submitting on brief.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

While in custody at a treatment facility for persons civilly committed as sexually violent

predators, the appellant, Willie Williams, masturbated in front of two different female employees,

on two different days. He was ultimately convicted by a jury of two counts of indecent exposure, in

violation of Code § 18.2-387. The question here is whether the trial court erred by allowing the

Commonwealth to refer to Williams as a "sexually violent predator" at trial. We assume that it was

an abuse of discretion to allow the reference, but the particular circumstances of the single use of

this phrase in the opening statement and the overwhelming evidence of guilt renders the error

harmless.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

The Virginia Center for Behavioral Rehabilitation (VCBR) is a "maximum secur[ity] facility" that houses individuals who have been civilly committed as sexually violent predators. *See* Code §§ 37.2-900 to -921. The VCBR staff refer to these individuals as "residents." After arriving at the VCBR, residents are informed that they must close the doors and windows to their "rooms" when they are nude, using the bathroom, or masturbating.

Denise Smith worked as a Safety Security Treatment Technician (SSTT) at the VCBR. Her duties included "making rounds" every thirty minutes to account for each resident and "documenting any behavior." During one of her rounds, as Smith walked past Williams's room, she saw him through his partially open door standing at his commode, facing the door to the room. She told Williams to close the door if he was using the bathroom and continued on her rounds. During her next round thirty minutes later, Williams's door remained open, and she observed him standing in the same location and saw "plain as the day" that Williams "had his penis in his right hand stroking it up and down." After she again asked him to close his door, he ignored her instruction and "kept stroking" his penis. Ultimately Smith closed the door for him. Video surveillance footage corroborated Smith making her rounds that day and closing Williams's door.

A few days later, Ruth Edens, a registered nurse at the VCBR, saw Williams standing in the open doorway of his room, facing the "day room" where she was checking on other residents. His hand was "close to his pelvis region," moving "back and forth" rapidly. Although Edens did not see Williams's penis, a VCBR criminal investigator later reviewed surveillance camera footage and

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Here, there is no disagreement as to the relevant facts in any event.

testified at trial that the recording showed Williams "masturbating in a vigorous up and down motion" and included a brief view of his penis.[2]

A grand jury indicted Williams on two counts of indecent exposure. Before the jury trial, Williams moved the court to prohibit the Commonwealth from using the term "sexually violent predator." He argued the term was "overly prejudicial" and "would unfairly inflame the passions and prejudices of the jury." Williams did not object to the Commonwealth eliciting evidence that he was a resident of the VCBR, had a private room, and was not free to leave. In response, the Commonwealth argued that the jury had "a right to know" that the VCBR was "a treatment facility for sexually violent predators." The trial court ruled that the Commonwealth could use the phrase "sexually violent predator" but could not "harp on it and ask every witness what do you do with these sexually violent predators." The trial court encouraged Williams to object if the Commonwealth used the phrase "gratuitously."

At the jury trial, the Commonwealth stated in its opening that the incidents occurred at the VCBR and explained that:

> It's officially and formally known as the Virginia Center for Behavioral Rehabilitation. It's a treatment facility for civilly committed sexually violent predators. It's not a prison. It's not a jail. The folks who reside there are called residents. They're not inmates, prisoners, anything like that.

The Commonwealth then explained the layout of the facility. That was the only time the phrase "sexually violent predator" was used at trial. After the close of evidence and argument by counsel, the jury convicted Williams of two counts of indecent exposure. Williams appeals.[3]

---

[2] The video of the August 7, 2022 incident was not admitted into evidence.

[3] After the jury rendered its verdict and was excused, the phrase "sexually violent predator" was used at sentencing before the judge. Williams does not allege that it was error to discuss his civil status at that stage of the proceedings.

ANALYSIS

The only issue is whether the trial court abused its discretion in allowing the

Commonwealth to refer to Williams as a sexually violent predator at trial.

To begin with, both Williams and the Commonwealth rely on cases that review a trial

court's decision to admit *evidence* at trial for an abuse of discretion. We agree that the abuse of

discretion standard applies, but for a slightly different reason. Here, no witness testified that the

VCBR was a facility for "sexually violent predators," and no other evidence was admitted at trial

using the phrase. "[O]pening statements are not evidence." *Evans-Smith v. Commonwealth*, 5

Va. App. 188, 196 (1987). We review a trial court's determination of whether an argument was

objectionable for the abuse of discretion and whether there was substantial prejudice to the

defendant. *Avent v. Commonwealth*, 279 Va. 175, 204 (2010). In the context of "improper

statements in argument," the Supreme Court has explained such remarks constitute "reversible

error, where such statements are so impressive as to remain in the minds of the jurors and influence

their verdict." *Andrews v. Commonwealth*, 280 Va. 231, 302 (2010) (quoting *Kitze v.

Commonwealth*, 246 Va. 283, 288 (1993)).

The prejudice component of the inquiry dovetails with our duty to consider whether any

error was harmless. "This Court will not reverse a trial court for errors 'that were harmless to the

ultimate result.'" *Lienau v. Commonwealth*, 69 Va. App. 254, 269 (2018) (quoting *Carter v.

Commonwealth*, 293 Va. 537, 544 (2017)). We must affirm if we are sure that "absent the

[remark]" it is "clear beyond a reasonable doubt that the [factfinder] *would have* returned a verdict

of guilty." *Commonwealth v. White*, 293 Va. 411, 421 (2017) (quoting *United States v. Hasting*,

461 U.S. 499, 510-11 (1983)).[4]

---

[4] We recite the harmless error standard that applies when the error complained of is constitutional, instead of the lower standard for non-constitutional errors, because Williams argues that the Commonwealth's remark violated his due process right to a fair trial.

- 4 -

We will assume without deciding that the trial court erred by allowing Williams to be described as a "sexually violent predator."  Indecent exposure under Code § 18.2-387 requires the Commonwealth to prove that a defendant "intentionally[5] makes an obscene display or exposure of his person, or the private parts thereof, in any public place."  If the Commonwealth had elicited testimony from a witness that the VCBR was a facility that housed sexually violent predators, the evidence would not have been relevant to the offense charged and would carry an unreasonably high risk of prejudice.  Allowing the Commonwealth to refer to the same in opening statement raises the same concerns.  Yet we must find the error was harmless here because of the particular circumstances around the Commonwealth's use of the phrase combined with the other strong evidence of guilt.[6]

In reaching this conclusion, we note that the Commonwealth only indirectly described Williams as a "sexually violent predator" in that the Commonwealth referred to the VCBR as a treatment facility for civilly committed sexually violent predators.  This description was in the context of explaining the layout of the facility and why the residents had to live there and follow certain rules.  The reference occurred only one time, and was not repeated in closing argument.

---

[5] Someone adjudged to be a sexually violent predator, by definition, is one who "because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts."  Code § 37.2-900. Williams has not challenged the "intent" element of Code § 18.2-387 given his civil commitment, and so we do not address it here.

[6] We must apply harmless error review unless the error is structural in nature. *Montgomery v. Commonwealth*, 56 Va. App. 695, 701 (2010).  A "structural error is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Morrisette v. Warden of the Sussex I State Prison*, 270 Va. 188, 192 (2005) (quoting *Arizona v. Fulminate*, 499 U.S. 279, 310 (1991)).  The "highly exceptional" category of structural errors includes, for example, the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." *United States v. Davila*, 569 U.S. 597, 611 (2013). Williams has not argued this error was structural, and we cannot say that the limited remark "affect[ed] the framework within which the trial proceed[ed]" under our caselaw.

Williams could have requested a limiting jury instruction that would have reminded the jury that statements made in opening statement are not evidence, but he did not do so.

Weighing the particulars of this limited reference against the evidence of guilt, we are certain that, even without the remark, the jury would have returned a verdict of guilty. *See White*, 293 Va. at 421.

As to the first incident of indecent exposure, Smith unequivocally testified that she saw Williams "stroking" his penis as he stood in his room with his door open and she could see his actions "plain as the day." This occurred after she asked him to close his door, and he ignored that request.

Footage from the VCBR's surveillance cameras corroborated Smith's account in that they showed her making the rounds she described in her testimony and that she ultimately closed the door to Williams's room for him.

As to the second incident, while Edens did not directly see Williams's exposed penis, she testified that his hand was "close to his pelvis region" and moving "back and forth" rapidly. The VCBR criminal investigator who viewed the surveillance video of the incident testified that Williams was "masturbating in a vigorous up and down motion" and that there was a brief view of his penis. When the investigator identified Williams's penis on the video during cross-examination, counsel for Williams did not challenge what the investigator saw, asking only, "It doesn't get any clearer than that you would agree?" In fact, the only defense that Williams's counsel advanced was the possibility that the witnesses may have been mistaken in what they saw due to the low light and limited duration of the interactions, and because the direct video footage of the incidents was not introduced at trial.

In light of the largely uncontradicted evidence of guilt, as well as the limited prejudice caused by a singular reference to Williams's "sexually violent predator" status, it is clear that any error was harmless.

## CONCLUSION

For all these reasons, the trial court's judgment is affirmed.

*Affirmed.*

Chaney, J., dissenting.

The trial court abused its discretion and violated Willie Williams's constitutional right to a fair trial when the court allowed the Commonwealth to incurably prejudice the jury against Mr. Williams by unnecessarily labeling him a sexually violent predator at the outset of his jury trial. Because I would reverse Mr. Williams's convictions on this basis, I respectfully dissent.

At the time of trial, Mr. Williams was involuntarily confined in the Virginia Center for Behavioral Rehabilitation (VCBR), a maximum-security facility for sexually violent predators. Immediately before his jury trial on two charges of indecent exposure, Mr. Williams informed the trial court, by counsel, that the prosecutor had expressed her intent to use the phrase "sexually violent predator" during the jury trial. Mr. Williams moved the trial court to bar the Commonwealth from making any references to "sexually violent predator" during the jury trial, including voir dire and opening statement. Mr. Williams argued that the term "sexually violent predator" is not relevant because it is "not probative of any fact at issue in this case." Mr. Williams further argued that the Commonwealth's reference to "sexually violent predator" "would unfairly inflame the passions and prejudices of the jury," and would prejudice his right to a fair trial. Mr. Williams contended that the Commonwealth's use of "the phrase 'sexually violent predator' is so prejudicial as to almost automatically result in a mistrial."

The Commonwealth asserted in the trial court that the jury had "a right to know" that VCBR is a treatment facility for sexually violent predators. Although this fact was irrelevant to the question of whether Mr. Williams committed the charged crimes of indecent exposure, the trial court ruled that the jury was entitled to know the background of VCBR and allowed the Commonwealth to use the phrase "sexually violent predator" in the jury trial.

In its opening statement to the jury, the Commonwealth immediately informed the jurors that the two charged acts of indecent exposure were alleged to have occurred at VCBR, where

Mr. Williams was "a resident." The Commonwealth informed the jurors, "[i]t's a treatment facility for civilly committed sexually violent predators." Having achieved its obvious and only purpose to inform the jury of Mr. Williams's status as an adjudicated sexually violent predator, the Commonwealth did not use the phrase "sexually violent predator" again during the trial.

The trial court abused its discretion in allowing the Commonwealth to label Mr. Williams a sexually violent predator in the Commonwealth's opening statement. A trial court "by definition abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). The trial court made an error of law when it implicitly ruled that the Commonwealth's identification of Mr. Williams as a sexually violent predator would not undermine his right to a fair trial, which is "a fundamental liberty secured by the Fourteenth Amendment." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). The Commonwealth's identification of Mr. Williams as a "sexually violent predator" at the outset of the jury trial was inherently prejudicial because it created "an unacceptable risk . . . of impermissible factors coming into play." *Porter*, 276 Va. at 261 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986)). It cannot reasonably be disputed that the jurors' passions and prejudices were likely to be inflamed upon learning that the defendant—on trial for two charges of indecent exposure—is an adjudicated sexually violent predator. This information was highly likely to prompt jurors to draw highly unfavorable inferences about Mr. Williams's character and likely conduct. Beyond question, such information is "so prejudicial that it probably would remain in the minds of the jury and influence its verdict even if it were told to disregard it." *See Brandon v. Commonwealth*, 22 Va. App. 82, 91 (1996) (noting that a mistrial is justified when a curative instruction would be futile).

"[C]ourts are required 'to safeguard against "the intrusion of factors into the trial process that tend to subvert its purpose"' by prejudicing the jury." *Porter*, 276 Va. at 261 (quoting

*Woods v. Dugger*, 923 F.2d 1454, 1456 (11th Cir. 1991) (quoting *Estes v. Texas*, 381 U.S. 532, 560 (1965) (Warren, C.J., concurring))).  Recognizing that an instruction to disregard would not cure the prejudicial effect of being labeled a sexually violent predator before the jury, Mr. Williams, by counsel, moved *in limine* to prevent the Commonwealth from introducing incurable prejudice into his trial.  In denying Mr. Williams's motion, the trial court allowed the Commonwealth to label Mr. Williams a predator with a propensity to commit sex crimes. Allowing such inherently prejudicial statements by the Commonwealth constitutes reversible error because it irremediably prejudiced the jurors against Mr. Williams.  *See Andrews v. Commonwealth*, 280 Va. 231, 302 (2010) (holding that the prosecutor's improper statements constitute reversible error "where such statements are so impressive as to remain in the minds of the jurors and influence their verdict" (quoting *Kitze v. Commonwealth*, 246 Va. 283, 288 (1993))).

The majority acknowledges that "[i]f the Commonwealth had elicited testimony from a witness that the VCBR was a facility that housed sexually violent predators, the evidence would not have been relevant to the offense charged and would carry an unreasonably high risk of prejudice." I agree with the majority that "allowing the Commonwealth to refer to the same in opening statement raises the same concerns."  When the trial court allowed the Commonwealth to identify Mr. Williams as an adjudicated sexually violent predator before the jury, the trial court created an unacceptable risk that the jurors' prejudices and passions would affect the fact-finding process.  Allowing the Commonwealth to unnecessarily identify Mr. Williams as a sexually violent predator over his objection at his jury trial is analogous to unnecessarily compelling an incarcerated defendant to appear before the jury in jail or prison attire.  Both of these practices label the defendant an offender before the jury and thereby undermine the presumption of innocence which is "a basic component of a fair trial."  *Williams*, 425 U.S. at 503 (recognizing

that compelling a defendant to wear identifiable prison clothing at his jury trial is so inherently prejudicial that it deprives the defendant of his constitutional right to fair trial).

The majority's determination that the trial court created an unreasonably high risk of prejudice by allowing the Commonwealth's reference to Mr. Williams's status as a sexually violent predator is tantamount to finding that the trial court violated Mr. Williams's constitutional right to a fair trial. *See Porter*, 276 Va. at 261 (recognizing that in-court practices that present an unacceptable risk of "impermissible factors coming into play" are inherently prejudicial and "pose an unacceptable threat to a defendant's right to a fair trial"). The majority's opinion erroneously holds harmless the constitutional error of violating Mr. Williams's right to a fair trial. A trial court's error in violating a defendant's constitutional right to a fair trial can never be harmless given the Supreme Court's recognition of "some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . . ." *Chapman v. California*, 386 U.S. 18, 23 (1967). If the violation of a constitutional right essential to a fair trial can never be treated as harmless error, then the violation of a defendant's very right to a fair trial can never be harmless error. "[W]here the alleged constitutional error is the deprivation of the fundamental right to a fair trial, the finding of an error that deprives the defendant of his constitutional right to a fair trial cannot by definition be harmless." *Dey v. Scully*, 952 F. Supp. 957, 975 (E.D. N.Y. 1997) (quoting *Flanders v. Meachum*, 824 F. Supp. 290, 299 n.8 (D. Conn. 1993), *rev'd on other grounds*, 13 F.3d 600 (2d Cir. 1994)).

The trial court violated Mr. Williams's constitutional right to a fair trial when it allowed the Commonwealth to unnecessarily label him as a sexually violent predator at the outset of his jury trial. The trial court thereby infected the entire fact-finding process with incurable prejudice. Such constitutional error is necessarily reversible and, as a matter of law, can never

be harmless.  Therefore, I would reverse the trial court's judgment denying Williams's motion *in limine*, vacate the convictions, and remand for a new trial.